## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| JEAN MARIE MOSS,<br>6307 Rigoli Ln.<br>Glenn Dale, MD.  20769 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )    Civil Action No.:_____<br>) |
| JAMES H. BILLINGTON, Librarian, Library of<br>Congress,<br>101 Independence Avenue, S.E.,<br>Washington, D.C. 20540 | )<br>)<br>)<br>)    **Jury Demanded**<br>) |
| Serve:  JEFFERSON SESSIONS,<br>Attorney General for the United States<br> c/o Designated Representative<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | )<br>)<br>)<br>)<br>)<br>) |
| Serve:  JESSIE K LIU, United States<br>Attorney for the District of Columbia<br> c/o Designated Representative<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, DC 20530 | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff Jean M. Moss, by and through her undersigned counsel, and sues Defendant James H. Billington, Librarian, Library of Congress, for the cause of action stated as follows:

## INTRODUCTORY STATEMENT

1.     Plaintiff Jean M. Moss ("Plaintiff" or "Ms. Moss") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; and 42 U.S.C. § 1981a, for relief from discrimination based on her race (African American), and retaliation for engagement prior protected EEO activity.

2.     Defendant James H. Billington ("Defendant" or "The Librarian") discriminated against Plaintiff on the basis of her race (African American), subjected her to retaliation for her engagement protected EEO activity during the course of her employment with the Library of Congress ("LOC").

## PARTIES

3.     Plaintiff Jean Marie Moss is currently domiciled at 6307 Rigoli Ln, Glenn Dale, Maryland 20769, and is a United States citizen.  At all relevant times, Ms. Moss was an employee of the Library of Congress.

4.     Defendant James H. Billington ("Defendant" or "The Librarian") is being sued in his official capacity as the Librarian for the Library of Congress ("the Agency").

5.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. and

pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.

## VENUE

7.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia.  28 U.S.C. § 1391.  Venue is further proper in this district because there is no other district in which this action may otherwise be brought.  *Id*.

8.      Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the Library of Congress located at the 101 Independence Avenue, S.E., Washington, District of Columbia 20540.

## EXHAUSTION OF REMEDIES

9.      Plaintiff has exhausted all of her administrative remedies.

10.      On or around February 6, 2018, Plaintiff timely filed an EEO complaint with the Agency's EEO office, which was investigated by the Agency.

11.      The Agency provided Plaintiff with its Final Agency Decisions, which provided her with 90-days from receipt of the final decision to file her lawsuit.

12.      Plaintiff hereby timely files this action within 90-days after receipt of the Final Agency Decision.

## FACTS

13.      Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

14.     Ms. Moss, an African-American female, DOB xx-xx-8/1963, has been employed with the Library of Congress since January 2000.

15.     Ms. Moss' supervisory chain of command is as follows, Eugene Flanagan (White male), Director, National Programs/NIO (first level), Jane McAuliffe, Director/NIO (White female) (2nd level).

16.     Ms. Moss' official job title is Special Assistant to the Director, Partnerships and Outreach Programs, GS-301-14-257683.

17. On or around September 2014, Kathryn Mendenhall (retired), asked Ms. Moss to temporarily assist with responsibilities for the contracts and financials of the 2015 National Book Festival (NBF), which were duties that she was expected to perform without additional compensation.

18. As encouragement, Ms. Moss accepted these duties with an understanding from the Agency that she would be primarily positioned should a position become open that encompassed these duties.

19. Ms. Moss performed these duties for two and a half years without pay and at an acceptable performance level.

20. On or around August 2016, a GS-15 position was posted for a Supervisor Strategic Programs Coordinator under the Vacancy Announcement 160209, which encompassed the duties which she had been performing for the past two and a half years.

21. On or around December 7, 2016, the Agency, by and through its

22. Discriminating Officials/Responsible Management Officials (DO/RMO), Jane McAuliffe, Mary Eno (Director, Special Events & Public Programs/LBN )(White female).

4

and Eugene Flanagan interviewed Ms. Moss for the open Supervisory Strategic
Programs Coordinator position.

23. On or around January 4, 2017, the Agency, by and through its
Discriminating Official/Responsible Management Official (DO/RMO), Eugene
Flanagan, despite being qualified, informed Ms. Moss that she was non-selected for
the position. Instead, the Agency selected a Jarrod McNeil (White male), who is
younger than Ms. Moss and who did not possess the required certification for the
position nor was he more qualified than Ms. Moss for the position.

24. After her non-selection, Ms. Moss was requested to continue performing
the duties pertaining to the contracts and financials of the NBF, despite the fact that
these duties were encompassed in the Vacancy Announcement for the position for
which she was non-selection, however she declined.

25. Ms. Moss' supervisor, Eugene Flanagan (White Male), approached her
repeatedly about taking on these additional duties after her non-selection and after she
declined to do so voluntarily.

26. On or around February 7, 2017, Eugene Flanagan met with Ms. Moss and
informed her that he planned to "reposition" her duties to encompass the duties she
had been performing which had been encompassed in the GS-15 Vacancy
Announcement.

27.     In 2000 Ms. Moss was diagnosed with permanent medical condition that caused a
disability and this condition affects her major life activities.

28.     Ms. Moss' disability was documented and of record with her employer and Eugene
Flanagan, Jane McAulifee and Ms. Eno were aware of her disability.

29.     On or about February 6, 2017, Ms. Moss met with Ms. Katie Noethe, the Equal Employment Specialist at the Library of Congress to file an EEO complaint for her Non-selection for Vacancy Announcement 160209, Supervisory Strategic Programs Coordinator (GS-301-15).

30.     On or about February 10, 2017, Ms. Moss advised her supervisor, Eugene Flanagan via email that she had filed an EEO complaint regarding her non-selection.

31.     On June 22, 2017, Ms. Moss revised her EEO complaint to include details of the Reprisal she was being subjected to by her supervisor due to her engaging in EEO activity.

32.     The Selection Panel for the position Ms. Moss was non-selected for consisted of Eugene Flanagan, Jane McAuliffe and Mary Eno.

33.     The members of the Selection Panel became aware of Ms. Moss' race in 2010 and of her age in 2011 when she was presented with her 10 year pin during a POP Directorate meeting.

34.     Plaintiff was more qualified than the Selectee for the position for which she was non-selected.

35.     Ms. Moss has experience that the Selectee did not possess.  She possesses over 30 years of experience in personnel, project, financial project, financial and contract management. She is a certified COR with proven experience managing annual budgets over $52M and contracts totaling over $18M, with focus on process improvement, on-time delivery and executing within budget. She is experienced in directing large, complex projects valued from $2M to $19M, with some spanning multiple years.

36.     Specifically, since September 2014 Ms. Moss has performed all COR, all financial management and collaborative project management with other principals for the 2015, 2016 and 2017 National Book Festivals (NBF), through July 1, 2017.  In addition to performing her duties as Special Assistant, she directed all budgeting and procurement activities, including

technical evaluations, and vendor selection processes.  She initiated and prepared comprehensive reports and tracking procedures to monitor budgets, expenditures, and contracts for NBF that totaled nearly $2.5M.  Annually, she prepared over 80 procurement deliverables and related documents to award over 20 contracts for materials and services for the 2015, 2016 and 2017 NBF's.  This was a tremendous amount of additional work and responsibility for which she was never compensated.

37.     In addition to the fact that she was supremely more qualified for the position than the Selectee, given the treatment that Ms. Moss received from the Selection Panel and what she observed of them during the interview process, she believes that her race, my sex and my disability was considered as to why I was not selected. Panel members were distracted, late and not taking any notes.

38.     On January 4, 2017, Ms. Moss was advised by Eugene Flanagan that she was not selected for the position at issue.

39.     On January 4, 2017, Eugene Flanagan informed Ms. Moss that he expected her to continue with the additional uncompensated duties included in the GS-15 Supervisory Strategic Programs Coordinator.  He specifically stated that Ms. Moss would not be compensated for the extra duties.

40.     On January 12, 2017 Eugene Flanagan required Ms. Moss to meet him in his office to discuss continuing to do the contracting and financials for the NBF.  Ms. Moss again stated that she prefers to return to the duties of her position description as Special Assistant and no longer be directly involved with the National Book Fair (NBF) as the COR and Financial Manager.

41.     On February 6, 2017, Ms. Moss, in an email exchange with Mr. Flanagan, asked when she could meet with the Selectee to transfer information on the NBF contracts and financial

because she would be out of the office for 2-3 weeks. Mr. Flanagan told Ms. Moss "[D]on't change anything or close out anything" until we "on-board" the new person.

42.     Mr. Flanagan also instructed Ms. Moss saying you and I will remain in as-is mode to ensure a smooth transition, and until I have a better feel for what your role going forward looks like.  Ms. Moss responded "[W]ill there be additional compensation for me continuing to do these duties, while the new person is being paid at a GS-15 to these duties?".

43.     On February 23, 2017 Ms. Moss received a counseling memo from her supervisor, Mr. Flanagan, that directed her to continue to perform the COR and financial management duties for NBF and Gerswhin, or she would be subject to further disciplinary actions, including termination.

44.     On March 3, 2017, Ms. Moss responded to Mr. Flanagan's email and gave an accurate account of what was discussed in their meeting, she clarified the background as to why he had recruited her to temporally perform the COR, financial management, and project management duties in September 2014 for the NBF.  Also, Ms. Moss protested again about being required to continue to perform the duties of the GS-15 Supervisory Strategic Programs Coordinator position without compensation.

45.     Ms. Moss also pointed out that it was unfair that she was being required to perform the GS-15 duties when the Selectee could not perform the required duties but still enjoyed the benefits of the GS-15 compensation.

46.     Upon information and belief, the Selectee did not possess certification required under the Vacancy Announcement for the position Ms. Moss was non-selected for.  Ms. Moss possessed the required certification for the position at the time she was non-selected.

47.     The certification that the Selectee did not possessed was listed in the Vacancy Announcement as a required certification for the position.

48.     On March 29, 2017, Ms. Moss contacted Human Resources regarding the process for initiating a desk audit.

49.     On April 17, 2017, Plaintiff Ms. Moss requested her supervisor, Eugene Flanagan. review and sign the desk audit request.  On April 19, 2017 he refused to sign the request.

50.     On April 19, 20-17, Ms. Moss met with Eugene Flanagan and Jane McAuliffe and to discuss "NOI needs and priorities, and how we can best work together to achieve them."  During the meeting, Ms. Moss was handed a document with four bulleted paragraphs that described Eugene Flanagan's and Jane McAuliffe's performance expectations for her.

51.     From September 2014 until July 1, 2017, Ms. Moss was required to perform GS-15 duties of the position for which she was non-selected, without compensation.

52.     Ms. Moss, after she complained about the discriminatory non-selection, she was subjected to acts of harassment and reprisal and made to work in a hostile work environment.

53.     Since Ms. Moss believes that the treatment she received was a violation of her Title VII rights, Ms. Moss sought relief by complaining internally, as required.

54.     Ms. Moss now timely files this Complaint for relief from the discriminatory and illegal treatment that she experienced as a result of the Agency's actions and inactions.

## CAUSES OF ACTION

### COUNT ONE
**(Discrimination on the Basis of Gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

55.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

56.     As a female, Plaintiff is a member of a protected class (female).

57.     Because of her gender (female), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including the denial of a promotion, denial of compensation for additional duties she was made to perform outside of her job duties or position description in violation of Title VII, denial of a desk audit and requiring Plaintiff to perform duties outside of her position description.

58.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment since she had a significant change in her duties and responsibilities.

59.     Defendant knew that Plaintiff is a female prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of her gender (female).

60.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her gender (female).

61.     Defendant has limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her gender (female).

62.     As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

63.     Similarly situated male employee was selected over Plaintiff for a position for which she applied despite the fact that she was head and shoulders more qualified that the Selectee for the position.

64. Plaintiff's gender was a determining factor in Defendant's unlawful conduct toward Plaintiff.

65. Plaintiff's gender was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

66. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

67. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her gender (female).

68. Defendant discriminated against Plaintiff because of her gender (female) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

69. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

70. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

71. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a.   Award compensatory damages;

    b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

    c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

    d.   Award reasonable attorney fees, costs, and expenses incurred for this action;

    e.   Plaintiff to receive a GS-15 promotion and back pay;

    f.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

    g.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    g.   Supervisory training for the supervisors at issue herein;

    h.   Award equitable, declaratory, and injunctive relief; and

    i.   Award such other and further relief as this Honorable Court deems just and proper.

<u>**COUNT TWO**</u>
**(Discrimination on the Basis of Race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*)**

72.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

73.    As an African American, Plaintiff is a member of a protected class.

74.    Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including the denial of a promotion, denial of compensation for additional duties she was made to perform outside of her

job duties or position description in violation of Title VII, denial of a desk audit and requiring Plaintiff to perform duties outside of her position description.

75.    Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment since she had a significant change in her duties and responsibilities.

76.    Defendant knew that Plaintiff is an African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of her race (African American).

77.    Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American).

78.    Defendant has limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race (African American).

79.    As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

80.    Similarly situated White employees have not been terminated, for having the same or similar or more egregious misconduct.

81.    Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

82.    Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

83.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

84.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American).

85.     Defendant discriminated against Plaintiff because of her race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

86.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages including, but not limited, to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

87.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing.

88.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Award compensatory damages;

b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.   Promotion to the GS-15 level;

e.   Award reasonable attorney fees, costs, and expenses incurred for this action;

f.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

g.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

j.   Supervisory training for the supervisors at issue herein;

k.   Award equitable, declaratory, and injunctive relief; and

l.   Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
**(Discrimination on the Basis of Reprisal in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

89.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

90.   Plaintiff complained to her supervisors of the unlawful, hostile and discriminatory and retaliatory treatment that she to which she was being subjected.

91.   Since February 6, 2017 through her the filing of this Complaint, Plaintiff regularly made several complaints of disparate treatment and discrimination to her supervisors, her harasser, the Agency's EEO office about her treatment.

92.   Since Plaintiff's EEO complaints were not resolved and no action was taken to resolve them, Plaintiff filed a formal EEO Complaint, which named her harassers as responsible management officials.

93.     Plaintiff's EEO complaint was allegedly investigated by the Agency.

94.     Shortly after filing her EEO Complaint, Plaintiff began to be treated differently from her similarly situated co-workers and from how she was treated prior to complaining about the disparate treatment and discrimination.  Specifically, Plaintiff was harassed about performing additional duties without compensation, threatened by her supervisor with discipline, including termination, if she failed to continue to work without additional compensation and Plaintiff was humiliated in front of her co-workers and made to work in a hostile work environment in retaliation for engaging in EEO activity.

95.     Similarly situated co-workers (no prior EEO activity) were not subjected to the same adverse treatment or any adverse treatment.

96.     Defendant engaged in reprisal against Plaintiff because she opposed Defendant's discriminatory practices and participated in EEO activity.

97.     The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity.

98.     Plaintiff complained to her supervisor and through her chain of command about her discrimination.  Defendant knew, or should have known, of Plaintiff's participation in protected EEO activity before subjecting her to the aforementioned adverse actions.

99.     As a result of Plaintiff's open opposition to Defendant's discriminatory treatment, Plaintiff was routinely humiliated Plaintiff by the adverse treatment and the employer engaged in a persistent pattern of severe or pervasive harassment set forth herein, which created a hostile and offensive workplace.

100.    The adverse treatment that Plaintiff was being subjected to by Defendant was in front of and obvious to her co-workers.

101.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

102.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing.

103.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Award compensatory damages;

b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.   Award reasonable attorney fees, costs, and expenses incurred for this action;

e.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

f.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g.   Supervisory training for the supervisors at issue herein;

h.   Award equitable, declaratory, and injunctive relief; and

i.   Award such other and further relief as this Honorable Court deems just and proper.

**COUNT FOUR**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 794, et seq.**
**(Disability Discrimination)**

104.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

105.   At all relevant times, LOC was a recipient of federal funding within the meaning of the Rehabilitation Act.

106.    Plaintiff suffers from disability that affects a major life activity.

107.   Plaintiff is a qualified individual with a disability.

108.   Plaintiff's medical condition substantially limits major life activities; namely, her ability to speak and breathe.

109.   Plaintiff's condition is permanent.

110.   At the time of her non-selection, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities for the position at issue herein.

111.   Plaintiff's non-selection is a materially adverse action.  Any reason proffered for Plaintiff's non-selection would not be legitimate, and it would be pretext.

112.   Prior to being non-selected, Defendant was aware that Plaintiff suffered from for record disability.

113.   Plaintiff has been treated differently and subjected to different terms and conditions of employment due to her disability.

114.   Defendant intentionally discriminated against Plaintiff because of her disability.

115.   Defendant has limited, segregated and classified Plaintiff in a way which deprives

her of employment opportunities because of her disability.

116.    Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

117.    Plaintiff believes that she was not selected based upon her disability.

118.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

119.    Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

120.    Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a.    Award compensatory damages in excess Two Hundred Fifty Thousand Dollars ($250,000.00);

    b.    Award lost wages;

    c.    Award back pay and benefits, with interest;

    d.    Award future wages;

    e.    Award reasonable attorney fees, costs, and expenses incurred for this action;

    f.    Award equitable, declaratory, and injunctive relief; and

    g.    Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FIVE
### Age Discrimination in Employment Act of 1967,
### 29 U.S.C. § 621 *et seq.*
### (Employment Discrimination on the Basis of Age)

121.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

122.     The Age Discrimination in Employment Act makes it unlawful for an employer to take adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).

123.     At all relevant times, Plaintiff was over the age of 40 (DOB: xx-xx-1963).

124.     The Defendant did not subject the Selectee who was under the age of 40 to the same or similar adverse actions complained of throughout this Complaint.

125.     Defendant selected the Selectee for the position, a candidate, who upon information and belief was under the age of 40, younger yet not as qualified as Plaintiff to fill the position.

126.     Because of her age, Plaintiff suffered adverse employment actions, including denial of a promotion, denial of compensation for additional duties outside of her position description, threats of discipline, including termination, being forced to continue to work extra duties that were a part of the GS-15 position for which she was non-selected and denial of a desk audit that she requested all as a direct result of Defendant's discriminatory treatment.

127.     Defendant's discriminatory treatment was intentional.

128.     As a direct and proximate cause of the Department's conduct alleged in this Complaint, Plaintiff suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

129.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.     Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b.     Promotion to the GS-15 position;

c.     Declaratory and injunctive relief;

d.     Order the Defendant to institute a policy and procedure to be implemented against discrimination;

e.     Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.     Supervisory training for the supervisors at issue herein; and

g.     Such other and further relief as this Court deems just and proper.

## EQUITABLE RELIEF

130.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

131.     Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a.   Order the Defendant to institute a policy and procedure to be implemented against discrimination;

    b.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    c.   Supervisory training for the supervisors at issue herein; and

    d.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By:   *Donna Williams Rucker*
DONNA WILLIAMS RUCKER
  (D.C. Bar No. 446713)
TULLY RINCKEY PLLC
815 Connecticut Avenue, N.W.
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@fedattorney.com

February 27, 2018          Counsel for Plaintiff